## HOLMAN v. GOSLIN.

(Supreme Court, Appellate Division, First Department. April 14, 1905.)

1. PRINCIPAL AND AGENT—ESTABLISHMENT OF AGENCY.

A stockbroker who had his own customers and his own office, and who employed his own clerks, agreed with defendant that the latter should buy and sell stocks for him and for his customers, receive therefor certain commissions and be allowed certain rebates. Under this agreement, orders were telegraphed by the stockbroker to defendant, who sometimes executed them and sometimes did not. Where the orders were accepted, the stockbroker procured the margin from his customer, and gave him a memorandum of the transaction signed by himself. Defendant knew nothing of the broker's customers, but the latter extended credit to them as he saw fit, and stood the loss in case of a customer's failure to pay. The accounts between defendant and the broker were settled each day. *Held*, that the broker was not the agent of defendant, and the latter could not be held liable for representations made by the former to his customers.

2. BROKERS—TRANSACTIONS WITH CUSTOMERS—SETTLEMENT.

One who deposits money with a stockbroker to purchase stocks on margin cannot recover the money so deposited in the absence of proof that the stocks were not purchased as directed, but can only demand that the transaction shall be closed, and profits and losses adjusted, or tender to the broker the balance remaining due upon the purchase price, and take the stock.

Appeal from Judgment on Report of Referee.

Action by George W. Holman, as trustee, etc., against Alfred R. Goslin. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

William J. Lippmann, for appellant.
Joseph R. Swan, for respondent.

McLAUGHLIN, J. Action to recover $1,630 alleged to have been obtained by the defendant from the plaintiff by means of false and fraudulent representations. The complaint charges that on or about the 22d of July, 1897, defendant, with intent to deceive and defraud plaintiff by inducing him to deposit with defendant under the name of McMillan & Co., falsely and fraudulently represented to plaintiff that he (defendant) was a stockbroker, and would invest said moneys in the purchase of stocks for the plaintiff's benefit and credit, whereby plaintiff would realize large profits, which the defendant would pay over to him; that the plaintiff, relying on said representations and induced thereby, did, between the 22d day of July and the 22d day of August, pay to defendant $1,630 in cash, to be invested as aforesaid; that the representations so made were false, and known by defendant to be false when made; that he was not a stockbroker, and did not deal in stocks; and that, having obtained such moneys from the plaintiff, he failed and neglected to invest it as agreed, but unlawfully converted the same to his own use. The answer denied the material allegations of the complaint. After issue had been joined, the matter was sent to a referee to

hear and determine, who made a report in favor of the plaintiff for the amount claimed, upon which judgment was entered, and defendant appeals.

I think this judgment must be reversed on the ground that the evidence does not sustain the findings of the referee. It matters not whether the action be considered as one for fraud or for conversion. The evidence does not sustain a recovery upon either ground. The material facts upon which a recovery has been had are substantially uncontradicted. It appears that prior to June, 1897, the plaintiff had certain stock transactions, in which he dealt on a margin through Albert Falk, his broker. In that month he was told by Falk that he had made an arrangement with a responsible house connected with the exchanges, and thereafter, beginning in July, the plaintiff, relying upon Falk's statements, gave him various orders to purchase and sell stocks on a margin, and in doing so the payments made aggregated $1,630. The orders given by the plaintiff to purchase or sell stocks were in turn given by Falk to the defendant, who conducted business under the name of McMillan & Co. In the latter part of August or the first of September following, the defendant got into trouble with the police department, and the plaintiff thereupon demanded a settlement from him, which was promised, but never made. Plaintiff admitted that he never met the defendant until he demanded a settlement, and that was after the money which he now seeks to recover had been put up by him with Falk as margins. Therefore it conclusively appeared that the defendant did not make any false representations to the plaintiff upon which he relied in parting with his money. But it is contended that Falk was the defendant's agent, and that a recovery can be maintained upon this theory. The evidence does not establish that fact. Falk was sworn by the plaintiff, and testified that he had been in the stockbrokerage business for 17 years; that in May, 1897, he entered into an agreement with the defendant by which the defendant was to buy and sell stocks for him and for his customers; that he was to pay him certain commissions on the transactions, and was to be allowed a rebate on the closing of any transaction; that, when he received an order from a customer for the purchase or sale of stocks, he would telegraph the same by number to the defendant, who sometimes would execute it, and sometimes would refuse to do so; if it were accepted, he would get the margin from the customer, and give him a memorandum of the transaction, which was upon a printed form signed by Falk & Co., to the effect that that firm had purchased for the customer the stock at the price named; that at no time did the defendant know the name of any of Falk's customers; that he extended credit to them as he saw fit without consulting defendant; that, if a customer to whom he had extended credit did not pay, it was Falk & Co.'s loss, and not the defendant's; that at the close of each day the accounts between him and the defendant were settled, and the balance found due was paid. The testimony of Falk was corroborated by plaintiff's witness O'Connor. From the testimony of these two witnesses and others it appeared that Falk had his own customers,

and his own office, which was fitted up with a "ticker," and black-board, telephone, and telegraph instruments; that he employed his own clerks, and personally paid them their salaries out of his own funds, except upon one occasion when he was away from his office for about 12 days.

, The evidence fell far short of justifying a finding that Falk was the agent of the defendant, or that the defendant received the moneys in question from the plaintiff, or that he had been guilty of fraud in obtaining such moneys, or had converted the same. But even if it be assumed that Falk were defendant's agent, plaintiff was not entitled to recover. The moneys were deposited to purchase stocks on a margin, and no claim was made or any proof offered that they were not purchased as directed. Plaintiff is not entitled to the return of the money thus deposited. All he can claim is that the transactions shall be closed, and, if profits have been realized, take them, and, if any losses have been sustained, pay up, or, if he does not want to do this, tender to the defendant the balance remaining due upon the purchase price and take the stock. Markham v. Jaudon, 41 N. Y. 235. He certainly is not entitled to get back his margin and leave the stock on the defendant's hands.

The judgment appealed from therefore must be reversed, and a new trial ordered before another referee, with costs to appellant to abide event. All concur.